## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**DEBRA D. BLANTON,**

       **Plaintiff,**

**v.**                                  **Case No.  8:12-cv-940-T-30TBM**

**CAROLYN W. COLVIN, Acting**
**Commissioner of the United States**
**Social Security Administration,**[1]

       **Defendant.**

_____/

## REPORT AND RECOMMENDATION

The Plaintiff seeks judicial review of the denial of her claims for Social Security disability benefits and Supplemental Security Income payments.  Because the decision of the Commissioner of the United States Social Security Administration is not supported by substantial evidence or is not in accordance with the correct legal standards, I recommend that it be reversed and remanded for further proceedings.

A.

Plaintiff was forty-six (46) years old at the time of her initial administrative hearing in September 2008 and forty-eight (48) years old at the time of the supplemental administrative hearing in January 2010.  She stands 5 feet 2 inches tall and weighed 150 pounds according to her administrative filings.  Plaintiff has a GED and past relevant work as

---

[1]Carolyn W. Colvin became Acting Commissioner of Social Security on February 14, 2013.  Pursuant to Federal Rule of Civil Procedure 25(d), Ms. Colvin is substituted for Michael J. Astrue as the defendant in this lawsuit.

a stock clerk, retail clerk and cashier, and supervisor.  Plaintiff first applied for disability

benefits and Supplemental Security Income payments in February 2006, alleging disability as

of March 25, 2005, due to fibromyalgia and a bulging disc.  The claims were denied initially

and on reconsideration.  Plaintiff requested a hearing before an administrative law judge

("ALJ"), which was conducted on September 2, 2008.[2]  By decision dated January 21, 2009,

the ALJ concluded that despite severe impairments related to degenerative disc disease with

bulging discs and spurs of the cervical spine, fibromyalgia, carpal tunnel syndrome, and

migraine headaches, Plaintiff could still perform work at the sedentary exertional level and

thus was not disabled.  (R. 358-69).  Plaintiff requested that the Appeals Council review the

ALJ's decision.

　　　　While her initial claims were pending before the Appeals Council, Plaintiff filed

subsequent applications for disability benefits and Supplemental Security Income payments in

February 2009, alleging disability as of January 17, 2009, by reason of pain throughout her

---

[2]The Plaintiff was represented at the hearing by counsel and testified in her own behalf.  In sum, Plaintiff testified she was unable to work due to work-related neck and back injuries, fibromyalgia, migraine headaches, and breathing problems.  These conditions result in constant pain; limitations in turning her neck, walking, standing, sitting, lifting, reaching, and bending; and problems with focus and concentration.  Plaintiff has more "bad" days per month than "good" days.  On bad days, she usually stays in bed.  On good days, she helps get her son get ready for school and does simple things around the house.  She initially underwent physical therapy for her neck and back.  She has not had surgery.  She was prescribed numerous medications, some of which cause drowsiness, forgetfulness, difficulty focusing and concentrating, blurred vision, and weight gain.  (R. 841-67).  The ALJ also took testimony from a vocational expert.  On a hypothetical question assuming a person of Plaintiff's age, education, and work experience capable of sedentary work but no repetitive movements of the arms above her head and needing a sit/stand option, the expert opined that such person could not do Plaintiff's past relevant work but could perform other jobs available in the local and national economy.  (R. 867-70).

2

body due to neck and back injuries and fibromyalgia.  Plaintiff's applications were denied initially and on reconsideration.  Plaintiff again requested a hearing before an ALJ.

On September 25, 2009, the Appeals Council granted Plaintiff's request for review and remanded the case for consideration of new evidence.  (R. 392-94).  The Order also directed consolidation of Plaintiff's subsequently filed applications.  *Id.*

The supplemental hearing on remand was held on January 14, 2010.  Plaintiff was again represented by counsel and testified on her own behalf.  Her testimony was substantially the same as at the first hearing.  Since injuring her neck and back on the job, she has been unable to work.  She also claimed fibromyalgia with severe joint pain, headaches, and shortness of breath.  Her pain is constant and severe.  She testified to limitations in reaching and handling with her arms and hands, and significant difficulty lifting, standing, sitting, walking, bending and kneeling, and driving.  She tires quickly and has problems with focus and concentration.  Her pain medications make her sleepy and drowsy.  She does not sleep well at night due to pain and nightmares.  At this hearing, she claimed depression as well and stated she cries a lot.  Even on good days, her activities are limited to watching televison, doing simple tasks, and helping her son.  In her opinion, she is unable to do even simple work because of problems with sitting, standing, and concentration.  (R. 873-910).

The ALJ next took testimony from Irvin Roth, a vocational expert (VE").  On an assumption of a person of Plaintiff's age, education, and work experience capable of sedentary work with a sit/stand option but no repetitive movements overhead with the upper extremities; no climbing long ladders, scaffolds, ropes, or work at open heights; with only occasional twisting and bending; no concentrated exposure to noxious dust, fumes, gases, or

3

work in poorly ventilated areas; and limited to carrying out simple instructions and tasks, particularly not with high stress demand task situations, the VE testified that such person could perform the jobs of cashier, assembler, inspector, packer, and order clerk.  If such person needed to lie down two to three hours each workday, take unscheduled break every thirty minutes, or would miss more than four days a month, no work would be available.  (R. 910-15).

Also before the ALJ were medical records outlining the Plaintiff's medical history. These matters are addressed herein as necessary.

By his decision of March 10, 2010, the ALJ determined that while Plaintiff has severe impairments related to mild to moderate cervical spine degenerative disc disease with bulging discs and spurs, fibromyalgia, carpal tunnel syndrome, migraine headaches, depression, and anxiety, she nonetheless had the residual functional capacity to perform a restricted range of sedentary exertional work.  Upon this finding and testimony from the VE, the ALJ concluded that Plaintiff could perform jobs available to her in the local and national economy.  Upon this conclusion, the Plaintiff was determined to be not disabled.  (R. 23-39). The Appeals Council denied Plaintiff's request for review, and the ALJ's decision became the final decision of the Commissioner.

### B.

Entitlement to Social Security disability benefits and Supplemental Security Income payments requires the claimant establish that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12

4

months. . . ." 42 U.S.C. § 423(d)(1)(A).  A "physical or mental impairment," under the terms of the Act, is one that "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* at § 423(d)(3).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See id.* at § 405(g).  Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001) (quotations omitted).  The Commissioner must apply the correct law and demonstrate that she has done so.  While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (citations omitted).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. *Grant v. Richardson*, 445 F.2d 656 (5th Cir. 1971).  Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence. *Celebrezze v. O'Brient*, 323 F.2d 989, 990 (5th Cir. 1963).  Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to re-weigh the evidence, but is limited to determining whether the record, as a whole, contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled. *Dyer v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005).

In sum, the scope of review is limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied.  42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002); *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988).

C.

The Plaintiff raises five claims on this appeal.[3]  In particular, Plaintiff contends the ALJ erred (1) in assessing her subjective complaints, (2) in failing to accord proper weight to the findings of treating and examining doctors and instead, substituted his own opinions for those of the medical experts, (3) in determining her residual functional capacity, and (4) by engaging in "sit and squirm jurisprudence."  On her fifth claim, Plaintiff contends the ALJ's decision should be reversed based on new and material evidence submitted to the Appeals Council.  (Doc. 16).

Because Plaintiff's second claim has merit and warrants remand, it is the only claim addressed.  By this claim, Plaintiff summarily contends that the ALJ erred by failing to accord substantial weight to the findings of [unidentified] treating and examining sources because there is no medical evidence in the record that refutes their findings.  In her view, the

---

[3]Despite reaching a conclusion favorable to Plaintiff, I find her brief largely inadequate.  This Court's scheduling order requires Plaintiff to identify with particularity the discrete grounds upon which the decision is challenged and to support each ground by citation to the pages of the record relied upon when discussing the pertinent facts, medical evidence, and opinion evidence and by citation to governing legal authority that supports the same.  It also cautions that any ground for which those requirements are not met is subject to being disregarded for insufficient development and denied without further consideration.  (Doc. 15 at 1-2).  Here, Plaintiff essentially makes boilerplate arguments which fail to, or at best, only minimally articulate the record support for the same.  This is not a new issue with this counsel who continues to jeopardize his client's claims by his summary arguments.

evidence establishes that she is unable to sustain work activity. Thus, Plaintiff urges the ALJ ignored or improperly discounted these opinions solely because they conflicted with the ALJ's own opinions. (Doc. 16 at 5-6).

The Commissioner counters that the ALJ properly considered the treating and examining opinions of record and substantial evidence supports the ALJ's decision to discount the same. In particular, the Commissioner contends that the ALJ properly discounted the extreme limitations reported by the treating doctors given the typically unremarkable findings on examination, the conservative nature of their treatment, the results of diagnostic studies, improper reliance on Plaintiff's subjective complaints, and inconsistency with the record as a whole. Additionally, the Commissioner asserts the ALJ correctly noted that one of the so-called treating doctors saw Plaintiff only twice and thus is not a treating source. The Commissioner also contends the ALJ properly discounted the opinions of examining doctors light of Plaintiff's conservative treatment and inconsistency with the record as a whole. (Doc. 17 at 9-13).

As recognized by the Commissioner, it is apparent that Plaintiff is challenging the ALJ's rejection of all treating and examining source opinions with respect to her functional capacity. The treating doctors are Thomas DiGeronimo, M.D.; Brian Shaub, M.D.; and Charles Clay, D.O., and the examining doctors are Izabela Shaw, M.D., and Angel Martinez, Ph.D.[4] A summary of their opinions follows.

_____

[4]Aside from the opinions of the state agency consultants, no other doctors or psychologists, treating or otherwise, commented on Plaintiff's functional capacity.

Dr. Shaub, a family physician, treated Plaintiff from July 2005 to March 2007.  His diagnoses included moderate persistent asthma, bronchitis, hyperlipidemia, diabetes, depression, tension-type headaches, cervical spine stenosis, cervical neuritis, and fibromyalgia.  *See, e.g.,* (R. 524, 530, 624, 627, 630, 633, 636, 639, 645, 648).  In August 2006, Dr. Shaub completed three questionnaires pertaining to Plaintiff's functional capacity wherein he assessed limitations in Plaintiff's physical and mental condition which would preclude her from performing even sedentary work.  *See* (R. 522-36).  Among other things, he reported that Plaintiff's pain would constantly interfere with attention and concentration, and that Plaintiff could sit and stand for less two hours each in an eight-hour workday, was incapable of performing even low stress jobs, required unscheduled breaks every thirty minutes, could rarely lift ten pounds and occasionally lift less than ten pounds, and would miss more than four days of work per month due to her impairments.[5]  *See* (R. 522-23, 526-29, 531-34, 536).

Dr. DiGeronimo, a neurologist, treated Plaintiff from August 2005 to March 2007.  Myelograms and CT myelograms of Plaintiff's thoracic, lumbar, and cervical spines were conducted in August 2005.  Imaging of the thoracic and lumbar spines were normal.  (R. 581-82).  The cervical myelogram and CT myelogram revealed mild degenerative disc changes in

---

[5]As the decision reflects, the ALJ found that Dr. Shaub's opinions on Plaintiff's functional capacity were not totally persuasive because the opinions (1) were inconsistent with treatment records that revealed mostly normal examinations aside from reduced range of motion and spasms, (2) rested in part on his assessment of fibromyalgia and depression, impairments which were outside of his area of expertise, (3) were not consistent with the evidence of record as a whole, and (4) relied heavily and uncritically on Plaintiff's subjective report of symptoms and limitations.  The ALJ also noted that the issue of disability is reserved to the ALJ.  (R. 34).

C4-5, C5-6, and C6-7 associated with posterior disc bulge and spur complexes causing mild thecal sac compression, but no evidence of impingement or disc protrusion or extrusion.  (R. 583).  Electrodiagnostic studies conducted in August 2005 were consistent with "a right carpal tunnel syndrome, moderate motor and mild sensory but no evidence of nerve root irritation."  (R. 594).  Similar studies conducted in January 2007 were abnormal and consistent with "a mild right sensory carpal tunnel syndrome."  (R. 547).  Lab work done in September 2005 revealed a negative ANA (antinuclear antibodies) screen.[6]  (R. 575).  On July 19, 2006, the doctor completed a form on Plaintiff's physical functional capacity.  Therein, he opined that Plaintiff could occasionally lift ten pounds; could sit, stand, and walk for "10#" (sic) during an eight-hour workday; could sit or stand for fifteen minutes before changing positions; could perform occasional postural activities; should take unscheduled breaks every hour; and would miss four or more days of work each month.  (R. 226-27).  Dr. DiGeronimo also completed a one-page form indicating that Plaintiff's condition equaled the requirements for listing 1.05C-other vertebrogenic disorders, in light of pain, history of muscle spasm, significant limitation of range of motion in the spine, and appropriate radicular distribution of muscle weakness and sensory loss.[7]  (R. 228).

---

[6]A positive screen may indicate lupus or an autoimmune or connective tissue disease. http://www.rheumatology.org/Practice/Clinical/Patients/Diseases_And_Conditions/Antinuclear_Antibodies_(ANA)/ (last visited Aug. 27, 2013).  The American College of Rheumatology does not include a positive ANA screen in its diagnostic criteria for fibromyalgia.

[7]The ALJ found that Dr. DiGeronimo's opinions on listing requirements and Plaintiff's functional capacity were not totally persuasive because there was little or no correlation between the doctor's objective findings on repeated neurological examination and his assessment of essentially disabling limitations, and because there were little or no positive findings that supported the extreme limitations he identified.  (R. 33-34).

Dr. Clay, a rheumatologist, examined Plaintiff on three occasions from July 2006 to January 2007.  (R. 617-21).  His treatment notes are largely illegible and appear to contain few physical findings on exam.  He diagnosed fibromyalgia, prescribed medication, and recommended a psychiatric consult.  *See id.*  On August 14, 2006, the date of Plaintiff's second visit, Dr. Clay completed a fibromyalgia questionnaire.  In his opinion, Plaintiff's condition met the criteria for a diagnosis of fibromyalgia, her prognosis was guarded, and she was incapable of performing even low-stress work based on his observation.  (R. 229).  When asked to identify the clinical findings and laboratory/test results that showed Plaintiff's impairments, he responded "N/A."  *Id.*  Regarding specific physical abilities, Dr. Clay opined that Plaintiff could sit and stand for less than two hours in an eight-hour day, could occasionally lift less than ten pounds, and would miss more than four days of work a month.[8] (R. 232-34).

As for examining doctors, Dr. Shaw conducted a consultative examination of Plaintiff on June 3, 2009, upon request of the SSA.  Findings on exam included normal sensation, normal strength bilaterally, normal reflexes, and a slight limp on the left side.  (R. 772-73).  The doctor documented slightly reduced range of motion in Plaintiff's neck, left shoulder, and ankles, but range of motion was within normal limits in cervical

---

[8]The ALJ also found that Dr. Clay's medical assessment was not entirely persuasive, stating that (1) the doctor saw Plaintiff on only two occasions, (2) his opinion was internally inconsistent and was not consistent with the record as a whole given little to no positive findings to support the limitations assessed, (3) he found a limitation related to Plaintiff's depression, which is outside of his area of expertise, and based his finding on observation only, (4) he relied heavily and uncritically on Plaintiff's subjective report of symptoms and limitations and (5) the issue of disability is reserved to the ALJ.  (R. 34).

flexion/extension, lumbar spine, right shoulder, elbows, wrists, hands, hips, knees, and toes. (R. 774-76). Dr. Shaw assessed neck pain, fibromyalgia, rheumatoid arthritis, hyperlipemia, COPD, and diabetes. (R. 773). Dr. Shaw completed a treating source fibromyalgia questionnaire indicating that Plaintiff had gait disturbance, history of chronic pain and fatigue, no tender points, multiple joint pain, full grip and lower extremity strength, and required frequent periods of rest on a daily basis.[9] (R. 769).

Dr. Martinez conducted a consultative psychological evaluation of Plaintiff on June 20, 2009, upon request of the SSA. Cognitive screening suggested some deficits with sustained attention and concentration and poor remote memory, general knowledge fund, and short term recall. (R. 675). He opined that Plaintiff would have some difficulty understanding and remembering simple oral or written instructions, sustaining attention effectively and completing tasks requiring good focus and attention, and adapting to work-like situations due to reported medical problems. (R. 675-76). Dr. Martinez diagnosed a dysthymic disorder and a GAF of 55.[10] (R. 676). He concluding by stating that Plaintiff would benefit from counseling, should improve with management of medical issues and

---

[9]The ALJ found that Dr. Shaw's opinions were unpersuasive due to the lack of a treatment relationship with Plaintiff and because the opinions were somewhat internally inconsistent and inconsistent with the record as a whole. (R. 35).

[10]Global Assessment of Functioning ("GAF") is a standard measurement of an individual's overall functioning level "with respect only to psychological, social, and occupational functioning." AMERICAN PSYCHIATRIC ASS'N DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS at 32 (4th ed. 1994) (DSM-IV). A GAF of 51 to 60 means moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or coworkers). *Id.*

depression, had a good prognosis with treatment, and was capable of managing her funds.[11] (R. 676-77).

Lastly, state agency medical and psychological consultants reviewed Plaintiff's records and completed Residual Functional Capacity ("RFC") Assessment forms. In July 2009, a nonexamining state agency psychologist opined that Plaintiff had certain moderate limitations in understanding and memory, sustained concentration and persistence, and adaption, and would have difficulties with high stress/demand task situations but could carry out simple instructions and tasks.[12] (R. 716-717A). In December 2009, a nonexamining state agency physician opined that Plaintiff retained the functional capacity to perform light exertional work with an environmental limitation for avoiding concentrated exposure to fumes, odors, dusts, gases, poor ventilation, etc. (R. 823-30).

At the outset I note that an ALJ must state with particularity the weight given to different medical opinions and the reasons therefor.[13] *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011). Here, the decision reflects rather murky findings in that

---

[11]The ALJ employed the same reasons for discounting this examining psychologist's opinions: no treating relationship with Plaintiff and the opinions were internally inconsistent and inconsistent with the record as a whole. (R. 35).

[12]Nonexamining psychologists also reviewed Plaintiff's file in 2006. Both concluded that her mental impairments were not severe. (R. 203, 252). Their opinions were based on a consultative evaluation conducted in July 2006. (R. 215, 264). Although the ALJ mentioned the CE in 2006 (R. 30-31), the nonexamining psychologists' opinions were not addressed.

[13]"Medical opinions are statements from physicians . . . that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what the claimant can still do despite impairment(s), and [the claimant's] physical or mental restrictions." *Winschel*, 631 F.3d at 1179 (quoting 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2)).

regard.  In particular, while the ALJ found all treating and examining opinions not totally or

entirely persuasive, it is completely unclear which portions of those opinions the ALJ found

were persuasive (if any).  As for the points raised by Plaintiff, despite consistent findings by

the treating or examining sources that assessed Plaintiff as limited to a degree precluding even

sedentary work, the ALJ concluded otherwise.  As noted, he did so by concluding that the

opinions were not supported by the objective record or the doctors' own clinical findings and

were contrary to the record as a whole, and because they appeared too solicitous to Plaintiff's

subjective complaints.  (R. 33-36).  However, apart from the evidence from nonexamining

doctors, the records and opinions from these treating and examining doctors were the medical

record as a whole.  And, in this case, the lack of *objective* findings alone does not support an

opinion contrary from that of these doctors.  Here, Plaintiff suffered impairments, in

particular, fibromyalgia, which would not likely be revealed by any objective testing, could

be based on subjective complaints, and could give rise to the various limitations and

symptoms claimed by Plaintiff.  Because of the lack of other medical evidence to support the

his own assessment, I conclude that ALJ improperly substituted his own opinion for that of

these treating and examining doctors.  Accordingly, for these reasons, a remand is in order for

further consideration of the medical record.

In this circuit, when considering a treating physician's opinions, the ALJ must

ordinarily give substantial or considerable weight to such testimony unless good cause is

shown to the contrary.  *Winschel,* 631 F.3d at 1179 (citing *Lewis v. Callahan*, 125 F.3d 1436,

1440 (11th Cir. 1997)).  Good cause for rejecting a treating source's opinion may be found

where the treating sources's opinion was not bolstered by the evidence, the evidence

supported a contrary finding, or the treating source's opinion was conclusory or inconsistent with his or her own medical record. *Id.* (citing *Phillips v. Barnhart,* 357 F.3d 1232, 1240-41 (11th Cir. 2004)). And, when considering the opinions of non-treating doctors, the opinion of an examining doctor typically is entitled to more weight than the opinion of a nonexamining doctor. *Broughton v. Heckler,* 776 F.2d 960, 961-62 (11th Cir. 1985); 20 C.F.R. §§ 404.1527(c)(1), 416.927(c)(1). On the other hand, the reports of nonexamining, reviewing physicians, when contrary to those of examining physicians, are entitled to little weight in a disability case, and standing alone do not constitute substantial evidence on which to base an administrative decision. *See Lamb v. Bowen,* 847 F.2d 698, 703 (11th Cir.1988) (quoting *Sharfarz v. Bowen,* 825 F.2d 278, 280 (11th Cir.1987)).

While the ALJ espoused several reasons for discounting the medical opinion evidence set forth above, I am constrained to conclude that he did so in this case by substituting his own opinion for that of treating doctors. Given the undisputed diagnoses of fibroymalgia throughout this rather voluminous record, *see* (R. 537-41, 543-44, 550-51, 553-54, 558, 562, 566, 568, 618, 620-21, 625, 633, 636, 639, 645, 773), the ALJ's finding that Plaintiff's fibromyalgia constituted a severe impairment, *see* (R. 26), and the lack of any contrary evidence, I conclude that the ALJ was without a record basis to discount all treating and examining source opinions. In short, the ALJ did not demonstrate adequate good cause to discount the treating doctor's opinions or state adequate reasons to discount those of the examining doctors. And, in light of these errors, it is impossible to ascertain whether the ALJ's ultimate determination on disability is supported by substantial evidence and a remand for further consideration is warranted. *See Gibson v. Heckler*, 779 F.2d 619, 622 (11th Cir.

1986) (providing that failure to apply the correct legal standards or to provide the reviewing court with a sufficient basis on which to determine that the correct legal principles have been followed or that substantial evidence exists mandates a reversal).

Here, although the ALJ found that Plaintiff's fibromyalgia was a severe impairment under the Act,[14] he discounted the same by concluding that:

> [T]he record in this case does not demonstrate the level of symptoms which would support a finding of disability based on a diagnosis of fibromyalgia.  Significantly, in September 2005, laboratory studies revealed that the claimant's ANA and sedimentation rate were within normal ranges.  In July and August 2006, results of physical examinations by rheumatologist Dr. Clay were sparse and appeared to contain no significant positive findings.  In November 2006, primary care physician Dr. Shaub noted that the claimant was in no acute distress and was stable on medications, seeing neurology and rheumatology with improvement of symptoms.  In August 2009, examining physician Dr. Shaw said that the claimant had no tender points.

(R. 36-37).  However, the ALJ is not a doctor and, absent some medical support for the conclusion, it does appear he substituted his opinion on the severity of this condition for that of the treating and examining doctors.  In large part, the ALJ relied on the lack of objective findings for the conclusion that Plaintiff could still perform a limited range of sedentary work.  (R. 37).  In this case, I find that improper.

---

[14]The ALJ considered Plaintiff's "allegations of fibromyalgia within the context of Social Security Ruling ("SSR") SR 99-2p.  (R. 36).  *See* SSR 99-2p, 1999 WL 271569 (Apr. 30, 1999).  That ruling provides guidance on evaluating cases involving chronic fatigue syndrome.  The ALJ issued his decision in March 2010, and thus did not have the benefit of SSR 12-2p, which addresses the evaluation of fibromyalgia.  *See*, SSR 12-2p, 2012 WL 3104869 (July 25, 2012).

While the lack of clinical support might otherwise be an acceptable reason for discounting a treating physician's opinion, under certain circumstances, it is improper to do so in cases involving fibromyalgia. *See Somogy v. Comm'r of Soc. Sec*., 366 Fed. Appx. 56, 65 (11th Cir. 2010) (providing that "the nature of fibromyalgia itself renders over-emphasis upon objective findings inappropriate") (internal citations omitted);[15] *Stewart v. Apfel,* 2000 U.S. App. LEXIS 33214 at *7-10 (11th Cir. 2000) (noting that fibromyalgia often lacks medical or laboratory signs; indeed, its hallmark is a lack of objective evidence).  Under the circumstances of this case, given the undisputed diagnosis of fibromyalgia and the lack of contrary evidence or opinions, I conclude that the objective findings of record did not provide an adequate basis to discount the opinions of the treating and examining sources. *See Somogy* (the lack of objective clinical findings to support a fibromyalgia diagnosis is insufficient, standing alone, "to support an ALJ's rejection of a treating physician's opinion as to the claimant's functional limitations."); *see also Moore,* 405 F.3d at 1212 (recognizing that a treating doctor's opinion is particularly valuable with respect to fibromyalgia because objective evidence is often absent).

Contrary to the Commissioner's urging, the other reasons the ALJ gave for discounting the opinions of the treating and examining doctors do not survive scrutiny.  First, as for the ALJ rejecting these opinions because "they apparently relied quite heavily on the subjective reports of symptoms and limitations provided by the claimant and seemed to uncritically accept as true most, if not all, of what [she] reported," *see* (R. 34), given the

---

[15]Pursuant to Eleventh Circuit Rule 36-2, unpublished opinions are not considered binding precedent, but may be cited as persuasive authority.

nature of fibromyalgia that was improper as well.[16]  *See Somogy*, 366 Fed. Appx. at 64

(recognizing that a claimant's subjective complaints are often only way of determining

severity and resulting limitations)*; Green-Younger v. Barnhart*, 335 F.3d 99, 107-09 (2d Cir.

2003) (providing that a doctor's opinion regarding functional limitations is not undermined by

reliance on the plaintiff's subjective complaints when the plaintiff suffers from fibromyalgia).

Second, while the ALJ is correct that the issue of disability is reserved to the Commissioner,

*see* 20 C.F.R. §§ 404.1527(d)(1), 416.927(d)(1), the doctors here did not state Plaintiff was

disabled or unable to work.  Rather, their opinions addressed Plaintiff's physical (and mental)

capabilities and thus were "medical opinions" as defined by the regulations.  *See id.* at §§

404.1527(a)(2), 416.927(a)(2).  Third, the ALJ stated the opinions were not consistent with

the record as a whole, yet he did not provide any specific examples of purported

inconsistencies and neither has the Commissioner.  Fourth, the ALJ's blanket statement that

the doctors' reports appear to contain internal inconsistencies is left unexplained (R. 35), and

a review of the decision reveals that this is simply another way of saying the assessments are

inconsistent with the objective findings.  Fifth, while the ALJ stated doctors may give

opinions like the ones here because they sympathize with patients or the patients badger them

for the same, there is no indication of that here and the ALJ does not find that there is.

 As for Drs. Shaw and Martinez, the examining doctors selected by the SSA, it is

nonsensical for the ALJ to have discounted their opinions on the basis that they were not

---

[16]A claimant's subjective complaints of disabling, fibromyalgia-related pain may be
bolstered by evidence of numerous visits to doctors over the years, undergoing many
diagnostic tests, and taking numerous prescription medications.  *See Somogy*, 366 Fed. Appx.
at 64.  The record in this case reveals such evidence.  *See, e.g.* (R. 539-43, 546-48, 550, 553,
555-56, 560-61, 567, 573-75, 581-83, 593-96, 625, 634, 639-40, 771).

treating doctors, particularly when their opinions appear consistent with those of the treating doctors. As with the treating doctors, the ALJ also discounted their opinions as being internally inconsistent and inconsistent with the record as a whole yet fails to explain why.[17] Without more, those reasons are simply conclusory and unsupported. As for Dr. Clay, the Commissioner and ALJ surmise he was an examining source since he examined Plaintiff only twice. That, however, is inaccurate. He examined Plaintiff on at least three occasions. In any event, regardless of his status as a treating or examining physician, given that he was a specialist on fibromyalgia and opined on Plaintiff's fibromyalgia-related limitations, some effort should have been made to ascertain the bases of his opinion and decipher his largely illegible notes prior to discounting his opinion in total.[18] Further, given the illegibility of

---

[17]With regard to Dr. Shaw, the ALJ did state that her opinion appeared internally inconsistent since she reported that Plaintiff had only a slight limping gait on the left side with no medically necessary hand-held assistive device necessary for independent ambulation, normal grip strength, and normal lower extremity strength. Those reasons, however, are largely inapposite in fibromyalgia cases and do not support rejecting the doctor's opinion on Plaintiff's functional capacity. While the ALJ also noted that Dr. Shaw did not report tender points, under the American College of Rheumatology's alternative diagnostic criteria for fibromyalgia, documentation of tender points is no longer required. *See* SSR 12-2p, 2012 WL 3104869, at *2-3 (July 25, 2012).

[18]While it does not appear that the Eleventh Circuit has addressed this particular issue, other circuits have specifically held that the illegibility of important documents, due to poor copy quality or handwriting, may warrant a remand for clarification and supplementation in disability cases. *See Cutler v. Weinberger*, 516 F.2d 1282, 1285 (2d Cir. 1975) (remanding in part due to illegible medical reports); *Bishop v. Sullivan*, 900 F.2d 1259, 1262 (8th Cir. 1990) (remanding for further development of the evidence given illegibility of important evidentiary material); *Anderson v. Astrue*, Case No. 2:08cv917-CSC (WO), 2010 WL 1052845, at *2 (M.D. Ala. Mar. 23, 2010) (remanding in part because several records were illegible and thus court was unable to determine whether decision was supported by substantial evidence); *see also Manso-Pizarro v. Sec'y of Health & Human Servs.*, 76 F.3d 15, 18 n. 5 (1st Cir. 1996) ("[i]n this case, the unreadable entries may have some import. We think that it is the duty of the ALJ, on remand, to make some effort to decipher them.").

18

portions of his notes, the ALJ's rejection of his opinion on the basis of internal inconsistency and lack of positive findings is unsupported.

In sum, in arriving at his RFC assessment, the ALJ found unpersuasive the opinions on the same provided by all treating and examining doctors, found generally persuasive the findings by the nonexamining state agency consultants, and rejected Plaintiff's subjective allegations about her physical and mental capabilities on the conclusion that such were contrary to the medical record.  Yet, there is no other medical evidence specifically addressing Plaintiff's functional capacity aside from that which was rejected.  While the ALJ is correct that the RFC determination is his province, the determination must be supported by substantial evidence of record.  Here, I am left to conclude that the ALJ reached his RFC assessment by cherry picking the medical and psychological evidence and substituting his own lay medical evaluations for those of Plaintiff's doctors.[19]  As Plaintiff notes, doing so is impermissible.  *See Freeman v. Schweiker*, 681 F.2d 727, 731 (11th Cir. 1982) (ALJ may not substitute his opinion for that of a doctor); *Marbury v. Sullivan*, 957 F.2d 837, 840-41 (11th Cir. 1992) (Johnson, J., concurring) (finding that an "ALJ sitting as a hearing officer abuses his discretion when he substitutes his own uninformed medical evaluations for those of a claimant's treating physicians")*; McCruter v. Bowen*, 791 F.2d 1544, 1548 (11th Cir. 1986) (providing that it is improper for an ALJ to focus on one aspect of the evidence while disregarding or ignoring other contrary evidence).

---

[19]Although the ALJ stated he was giving Plaintiff the benefit of the doubt by finding she could perform a limited range of sedentary work (R. 37), the basis of the statement is unclear given his finding that Plaintiff "exaggerated her symptoms and restrictions as theses are not shown to by supported by the medical sings and laboratory findings to the level of disability alleged."  (R. 30).

Finally, because the ALJ's reevaluation of the medical and psychological opinions addressed herein necessarily will require reconsidering the Plaintiff's credibility and RFC, the other issued raised by Plaintiff on this appeal need not be addressed.[20] *See Jackson v. Bowen*, 801 F.2d 1291, 1294 n. 2 (11th Cir. 1986) (stating that where remand is required, it may be unnecessary to review other issues raised).

### D.

For the foregoing reasons, the decision of the Commissioner of the United States Social Security Administration is not supported by substantial evidence or is not in accordance with the correct legal standards, and I recommend that it be reversed and remanded for further proceedings before the Commissioner consistent with this Report and Recommendation.  I further recommend that the Clerk be directed to enter Judgment in favor of the Plaintiff and to close the case, and the matter of fees and costs shall be addressed upon further pleadings.

Respectfully submitted this
9th day of September 2013.

THOMAS B. McCOUN III
UNITED STATES MAGISTRATE JUDGE

---

[20]Both parties have filed notices of supplemental authority (Docs. 17-18), but the authority cited pertains to issues that the Court need not reach and thus were not addressed.

## **NOTICE TO PARTIES**

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its service shall bar an aggrieved party from attacking the factual findings on appeal and a *de novo* determination by a district judge.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; M.D. Fla. R. 6.02; *see also* Fed. R. Civ. P. 6.

Copies furnished to:
The Honorable James S. Moody, United States District Judge
Counsel of Record